UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENG SAETEURN,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL[1],<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:18-cv-0538 - JLT<br><br>ORDER REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF SENG SAETEURN AND AGAINST DEFENDANT ANDRWE M. SAUL, COMMISSIONER OF SOCIAL SECURITY |

Seng Saeteurn asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny her application for benefits. Because the ALJ failed to apply the proper legal standards in evaluating Plaintiff's testimony and the credibility of her subjective complaints, the decision is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

Plaintiff filed an application for benefits on February 3, 2014, alleging disability beginning in May 2008, due to depression, anxiety, migraines, asthma, arthritis, weakness in her arms, pain in her

---

[1] This action was originally brought against Nancy A. Berryhill in her capacity as then-Acting Commissioner. Andrew M. Saul, the newly appointed Commissioner, has been automatically substituted. *See* Fed. R. Civ. P. 25(d).

1

left heel, and treatment for seizure. (Doc. 11-6 at 13; 11-4 at 13) The Social Security Administration denied her application at the initial level and upon reconsideration. (*See* Doc. 11-3 at 13-42; Doc. 11-5 at 16-26) After requesting a hearing, Plaintiff testified before an ALJ on November 29, 2016. (Doc. 11-3 at 21, 39) The ALJ determined she was not disabled and issued an order denying benefits on December 22, 2016. (*Id.* at 18-31) When the Appeals Council denied Plaintiff's request for review on February 13, 2018 (*id.* at 2-4), the ALJ's findings became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.     Medical Background**

Plaintiff reported having left foot pain and was diagnosed with calcaneal spurs in October 2009. (Doc. 11-9 at 25) She was later diagnosed with left plantar fasciotomy and Achilles tendon tear, for which she received surgery on December 22, 2010. (Doc. 11-8 at 3)

In January 2011, Dr. Eduardo Villarama completed a "Treating Physician General medical Evaluation." (Doc. 11-8 at 64-66) Dr. Villarama noted Plaintiff had left foot pain with limited range of motion following surgery, and she was in a wheelchair, "unable to bear [weight]" with her left foot. (*Id.* at 65, 66) He also indicated Plaintiff had right lateral epicondylitis and migraine headaches. (*Id.* at 65) Dr. Villarama opined Plaintiff had normal reflexes, senses, and normal range of motion in all joints other than her left foot. (*Id.*) Dr. Villarama noted Plaintiff did not have seizures. (*Id.*) According to Dr. Villarama, Plaintiff had "mild depression but [it was] controlled by medications." (*Id.* at 66)

Dr. Birgit Siekerkotte performed a consultative evaluation on March 27, 2011. (Doc. 11-8 at 67) Plaintiff reported she was "on various inhalers" for asthma, and had "shortness of breath at night when she [went] to bed" or exercising. (*Id.*) She told Dr. Siekerkotte that she had pain in her left foot, right arm, and left shoulder pain; headaches "3-4 times a week;" depression; stress; and insomnia. (*Id.*

3

at 68) Plaintiff told Dr. Siekerkotte that she "use[d] a wheelchair prescribed by her podiatrist," and Dr. Siekerkotte noted she used crutches. (*Id.* at 69) In addition, she told Dr. Siekerkotte she "need[ed] help with everything including washing herself and dressing herself," with which her daughter helped. (*Id.* at 68) Dr. Siekerkotte observed Plaintiff had "tenderness in the lower back area." (*Id.* at 70) She also determined Plaintiff had reduced strength in her right hand gripping at 4/5, right bicep at 4+/5, and quadriceps at 4+/5. (*Id.*) In addition, she found Plaintiff had "decreased sensation along the left leg laterally." (*Id.*) Dr. Siekerkotte opined Plaintiff could stand and walk for "[u]p to four hours based on decreased muscular strength" and sit without limitation. (*Id.* at 71) According to Dr. Siekerkotte, Plaintiff should continue use of her crutches and a wheelchair, "as recommended by the podiatrist … to prevent the claimant from following." (*Id.*) She determined Plaintiff should continue using a right elbow brace "for pain control," and she did not identify any amount of weight Plaintiff could lift and carry "based on the need to use crutches and to hold onto the crutches." (*Id.*) Further, Dr. Siekerkotte concluded Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl "based on [her] decreased grip strength and the need to use crutches with observed balance problems and decreased strength of the upper and lower extremities." (*Id.*) Dr. Siekerkotte opined Plaintiff could frequently reach, handle, and finger "when in a seated position," but never do so while walking due to her crutches. (*Id.*)

In November 2013, Plaintiff went to a clinic where she complained of "[f]acial weakness and numbness," along with "left upper extremity weakness and numbness." (Doc. 11-10 at 12) Plaintiff was transported by ambulance from the clinic to an emergency room, where she was admitted for a "transient ischemic attack and to rule out cerebrovascular accident." (*Id.*) Plaintiff had an MRI of her brain and CT scan of her head, which were each normal. (*Id.* at 22) An EEG test "revealed abnormal sharp waves occurring on the left side, with phase reversal in either of the tip of the left temporal lobe or the posterolateral left frontal lobe," which was "consistent with a seizure focus in the same area." (*Id.*) Dr. Dinesh Chhagahlal diagnosed Plaintiff with sensory seizures. (*Id.* at 22-23) Plaintiff was discharged two days later, on November 14, with a prescription for Keppra. (*Id.* at 23)

On November 19, 2013, Plaintiff had a follow-up appointment at Golden Valley Heath Center regarding her transient ischemic attack. (Doc. 11-12 at 40) Dr. Sukhdip Kang noted that Plaintiff appeared depressed, and diagnosed her with anxiety and depression. (*Id.* at 40, 42) Dr. Kang opined

4

Plaintiff's motor strength was 5/5 and her cranial nerves were intact. (*Id.* at 43) In addition, he determined Plaintiff was "oriented to time, place, person, and situation." (*Id.* at 43) Dr. Kang referred Plaintiff to Dr. Vang Leng Mouanoutoua for treatment of her depression. (*Id.* at 43, 46)

Dr. Mouanoutoua performed a case consultation on November 20, 2013 and noted Plaintiff reported "depressed feeling, tearfulness, much worries, forgetfulness, frequent anger, poor sleep of about 3-4 hours a night, sadness, and suicidal wishes without a plan 1-2x a day." (Doc. 11-12 at 46) She also described symptoms of anxiety, including "episodes of nervousness, sweating, heart racing, cold flushes, scary feeling[s], body uptight, and shaking feeling." (*Id.*) Dr. Mouanoutoua diagnosed Plaintiff with Panic Disorder and Major Depressive Disorder, recurrent, and severe. (*Id.*)

In December 2013, Dr. Mouanoutoua performed an intake evaluation. (Doc. 11-12 at 50) He noted Plaintiff's reported symptoms were severe and "poorly controlled." (*Id.*) In addition, Plaintiff stated her "symptoms… prevented her from performing daily chores and relating constructively with people." (*Id.*) Dr. Mouanoutoua opined Plaintiff was "oriented to person and place," and her "mood [was] anxious and depressed." (*Id.* at 51) In addition, he observed Plaintiff's attention was "gained, directed and distracted;" and he determined Plaintiff's memory was intact. (*Id.*) Dr. Mouanoutoua gave Plaintiff a GAF score of 50.[2] (*Id.* at 52)

On July 22, 2014, Dr. Mouanoutoua opined Plaintiff made "[m]inimal progress … [with] her chronic depression." (Doc. 11-19 at 2) He observed that Plaintiff "remain[ed] hopeless and depressed, but [was] more expressive in verbalizing her sadness, distress and grief." (*Id.* at 3)

Dr. Chang-Wuk Kang completed a mental residual functional capacity assessment on July 23, 2014. (Doc. 11-4 at 21) According to Dr. Kang, Plaintiff's mental impairment was not severe, based upon review of medical records from Dr. Abordo in 2011 that indicated Plaintiff had a depressive disorder that "was controlled by medication." (*Id.*)

On July 24, 2014, Dr. Roy Brown completed a physical residual functional capacity assessment. (Doc. 11-4 at 22-24) Dr. Brown opined Plaintiff could lift and carry 25 pounds occasionally and 20

---

[2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

pounds frequently; stand and/or walk "[a]bout 6 hours in an 8-hour workday;" and sit "[a]bout 6 hours in 8-hour workday." (*Id.* at 22) He determined Plaintiff had environmental limitations and needed to "[a]void concentrated exposure" to extreme cold, fumes, odors, dusts, gases, and hazards. (*Id.* at 23)

Dr. Yee also reviewed Plaintiff's medical record and completed a physical residual functional capacity assessment on October 29, 2014. (Doc. 11-4 at 35-38) Dr. Yee determined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit about six hours in an eight-hour day; and stand about six hours in an eight-hour day. (*Id.* at 36) Dr. Yee opined Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds. (*Id.*) Dr. Yee also found Plaintiff had environmental limitations and needed to "[a]void concentrated exposure to extreme cold, fumes, odors, dust, gas, and poor ventilation. (*Id.* at 37) In addition, Dr. Yee opined Plaintiff needed to "[a]void even moderate exposure" to hazards, such as machinery and heights. (*Id.*)

Dr. Mouanoutoua completed a mental residual functional capacity questionnaire on May 30, 2015. (Doc. 11-16 at 47) He noted that he treated Plaintiff on a bimonthly basis, and her diagnoses included Major Depressive Disorder, Panic Disorder, and "chronic medical problems." (*Id.*) He opined Plaintiff's prognosis was "poor to guarded." (*Id.*) According to Dr. Mouanoutoua, for 15% or more of an eight-hour day, Plaintiff was precluded from understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance, punctuality, and an ordinary routine; and all activities of adaptation. (*Id.* at 48-49) In addition, Dr. Mouanoutoua opined that for 5% or more of a workday, Plaintiff was precluded from understanding, remembering, and carrying out very short and simple instructions. (*Id.* at 48) Further, he concluded Plaintiff had difficulties with social interaction. (*Id.*) He concluded Plaintiff would be unable to complete an eight-hour workday and was likely to miss work five days or more per month. (*Id.*)

Dr. Mouanoutoua completed a second statement on June 10, 2016. (Doc. 11-19 at 15-16) He opined Plaintiff continued to suffer from "Major Depressive [Disorder], Severe, Recurrent." (*Id.* at 15) According to Dr. Mouanoutoua, Plaintiff's impairment precluded her performance for 15% or more of an eight-hour workday with remembering work-like procedures; maintaining attention for two-hour

segments; maintaining attendance, punctuality, an ordinary routine, and a normal workday; performing at a consistent pace; accepting instructions; responding appropriately to criticism from supervisors; dealing with normal work stress; and getting along with co-workers and peers. (*Id.*) In addition, he opined Plaintiff was precluded from understanding, remembering, and carrying out very short and simple instructions for 10 % of an eight-hour day. (*Id.*) Dr. Mouanoutoua opined Plaintiff was likely to be absent from work more than four days per month due to her impairments. (*Id.* at 16)

**B.    Disability Reports**

In May 2014, Plaintiff completed a "Disability Report- Adult" form in connection with her application for benefits. (Doc. 11-7 at 41) She identified the following medical conditions: depression, anxiety, migraines, asthma, arthritis, "right and left arm very weak," surgery on her left heel, and "treat for seizure." (*Id.* at 42) Plaintiff indicated that she stopped working because of her conditions on May 1, 2008. (*Id.*)

She completed a second Disability Report related to her request for reconsideration in August 2014. (Doc. 11-7 at 57) Plaintiff reported she had "more discomfort with [her] arthritis on both arms," and felt "more weakness on [her] body and muscle due to nerve damage." (*Id.*) Plaintiff noted: "My seizure and migraines interfere significantly [and] limit my ability to work." (*Id.*) She stated she had surgery on her left heel and felt pain when walking. (*Id.*) In addition, Plaintiff stated she suffered from anxiety and depression, which made her "unable to adjust to emotional stresses." (*Id.*) Plaintiff reported her daughters did the laundry, cooked, and ran errands. (*Id.* at 61) She also indicated her daughters also bathed and dressed her because her "arm hurt[] to[o] much." (*Id.*)

Plaintiff completed a third Disability Report in November 2014, and again reported her daughters would "help... with cooking, do [her] laundry, do grocery shopping, and assist [her] with bathing." (Doc. 11-7 at 70) Plaintiff stated she could not "lift more than one pound object[s], cannot walk very far, [and] can only stand for [a] couple minutes here and there." (*Id.*) She noted that her left heel continued to hurt, and a doctor prescribed a cane. (*Id.* at 67)

**C.    Administrative Hearing Testimony**

Plaintiff testified before an ALJ on November 29, 2016. (Doc. 11-3 at 40) She stated that she previously worked as a poultry cutter for Valley Fresh and Foster Farms, where she cut chickens and

sometimes used her hand for peeling. (*Id.* at 44)

She said she lived in a house with her husband and two daughters. (Doc. 11-3 at 43) Plaintiff reported that one of her daughters helped her with personal hygiene by getting her clothes and "turn[ing] the water on for [her] to take a shower." (*Id.*) Plaintiff stated she was able to dress herself, but did so very slowly because she did not want help dressing. (*Id.* at 52) Plaintiff testified she did not do any household chores or cook because she "lit fires." (*Id.* at 43) She said she would "sometimes ... use a microwave." (*Id.*) Plaintiff stated she did not engage in social activities. (*Id.*)

Plaintiff stated she continued to have pain in her heel following surgery, indicating she "lots [of] pain" if she walked without shoes. (Doc. 11-3 at 44-45) She also said that she had pain with her back and right shoulder, and she could "[]not lift anything." (*Id.* at 45) Plaintiff testified she took medication for pain—including ibuprofen, hydrocodone, Vicodin, Norco, and Tylenol with codeine—but "the only thing" she could do to help with her pain was "to lay down, or ... to lay down on the side." (*Id.* at 45-46, 47) In addition, Plaintiff said she suffered from headaches "all the time," and medication helped "just a little bit, 30, 40 minutes only." (*Id.* at 46)

She stated she also suffered from depression following the death of her son, and her legs and hands felt numb when she thought about it. (Doc. 11-3 at 48) Plaintiff said she was in therapy and receiving grief counseling. (*Id.* at 49) She stated she was unable to pay attention to things she watched on television, and she suffered from memory problems. (*Id.*) Plaintiff testified that she had suicidal thoughts "[a]lmost every night" (*Id.* at 52)

Plaintiff estimated that she could lift and carry two pounds at most, attributing the limitation to weakness in her left hand and pain in her right elbow. (Doc. 11-3 at 47) Plaintiff believed she could stand for ten minutes for she needed to sit, walk only around her house, and sit for 20 to 30 minutes at one time. (*Id.* at 47-48) Plaintiff said she was unable to bend over without feeling dizzy and she could not climb stairs. (*Id.* at 48) She testified she would lay down "[t]wo or three times a day, after [she took] a medication," for forty minutes to one and a half hours each time. (*Id.* at 51)

**D.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined first that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2008 through her

date last insured of December 31, 2013." (Doc. 11-3 at 23) At step two, the ALJ found Plaintiff's severe impairments included: "lumbar degenerative joint disease; left wrist degenerative joint disease; left elbow degenerative joint disease; obesity; left calcaneal spurs, status post left plantar fasciotomy and Achilles tendon repair; asthma; and a major depressive disorder." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 23-24) Next, the ALJ determined:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform a range of work at the light exertional level as defined in 20 CFR 404.1567(b). Specifically, she was able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six to eight hours, and sit six to eight hours in an eight-hour workday. She could occasionally stoop, crouch, crawl, and climb, and she was capable of performing forceful gripping and grasping with the non-dominant left upper extremity. The claimant further needed to avoid concentrated exposure to dusts, gases, fumes, and heights. In addition, she was limited to performing only simple routine tasks.

(*Id.* at 25) Based upon this RFC, the ALJ concluded Plaintiff was "capable of performing past relevant work as a poultry boner," both as Plaintiff performed the work and as generally performed in the national economy (*Id.* at 30) Therefore, the ALJ concluded Plaintiff was "not under a disability, as defined in the Social Security Act, at any time from May 1, 2008, the alleged onset date, through December 31, 2013, the date last insured." (*Id.*)

## DISCUSSION AND ANALYSIS

Appealing the decision to deny her application for benefits, Plaintiff asserts the ALJ failed "to provide a clear and convincing reasons based on substantial evidence to discount [her] testimony." (Doc. 21 at 21, emphasis omitted) On the other hand, the Commissioner argues "[s]ubstantial evidence supports the ALJ's finding that Plaintiff's subjective allegations were not consistent with the evidence." (Doc. 22 at 12)

**A.  ALJ's Credibility Analysis**

In evaluating credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse

credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 11-3 at 29) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

  1. <u>Failure to address hearing testimony</u>

As an initial matter, to evaluate a claimant's residual function capacity, the ALJ "must consider all relevant evidence in the record, including, . . . medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotations omitted); *see also Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001) ("[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony"). Thus, an ALJ has a burden to address a claimant's statements from an administrative hearing.

The ALJ failed to discuss Plaintiff's testimony at the administrative hearing concerning her functional limitations. Instead, the ALJ focused upon statements found in her disability reports and generally referred to her hearing testimony:

> In this case, the claimant's statements and allegations are not fully consistent with the medical and other evidence. For example, she alleged seizures limit her ability to work (see Exhibit 8E, p. 2), but the objective medical evidence does not support this. While she was hospitalized ... from November 12, 2013 to November 14, 2013 with complaints of facial weakness and numbness and weakness in the left upper extremity (see Exhibits 9F, pp. 11-14; 10F), this was a single isolated incident. Physicians did diagnose sensory seizures and prescribe Keppra, but that was because a transient ischemic attack (TIA) and cerebrovascular accident were both ruled out (Exhibits 9F, pp. 21-22; 10F). In addition, a magnetic resonance image (MRI) of the brain was normal (see Exhibit 9F, p. 15) and she did not have or receive treatment for another seizure after this hospitalization (see Exhibit 21F, p. 232). Accordingly, the objective medical evidence does not support the allegation that seizures limit her ability to work.
>
> The claimant alleged suffering from significant mental and physical limitations (see Exhibits 6E, p. 1; 9E, pp. 2-3; 11E; 13E; hearing testimony), but that is inconsistent with the medical and other evidence. For example the alleged mental limitations are inconsistent with reports from primary care providers showing the claimant was oriented times three with a normal thought process (see Exhibit 11F, p. 5), an intact memory and no suicidal or homicidal ideation (see Exhibit 12F, pp. 49-51). As for the alleged physical limitations, they are inconsistent with the negative examination of the

> musculoskeletal system and the claimant's full motor strength (Exhibits 12F, pp. 39-43; 21F, pp. 195-199).

(Doc. 11-3 at 17; *see also* Doc. 11-7 at 32 [Exh. 6E], 41-44 [Exh. 8E] 50-52 [Exh. 9E], 57-63 [Exh. 11E], and 66-72 [Exh. 13E])

Significantly, Plaintiff testified regarding her abilities, stating she was unable to pay attention to things she watched on television, and she suffered from memory problems. (Doc. 11-3 at 48) She estimated that she could lift and carry two pounds at most, attributing the limitation to weakness in her left hand and pain in her right elbow. (*Id.* at 47) Plaintiff believed she could stand for ten minutes, walk only around her house, and sit for 20 to 30 minutes at one time. (*Id.* at 47-48) Plaintiff stated she was unable to bend over without feeling dizzy and she could not climb stairs. (*Id.* at 48) However, the ALJ failed to address this testimony, or provide reasons for ignoring the limitations identified by Plaintiff during the hearing. Consequently, the ALJ failed to address relevant evidence in the record and erred in his analysis. *See Robbins*, 466 F.3d at 883; *Lewis*, 236 F.3d at 511; *see also Shimotsu ex rel. Shimotsu v. Colvin,* 2016 U.S. Dist. LEXIS 56886 (C.D. Cal. Apr. 27, 2016) (finding error where "the ALJ failed to acknowledge Plaintiff's hearing testimony, let alone provide reasons for disregarding it").

### 2. Rejection of statements based upon the objective medical record

To the extent the ALJ purported to find Plaintiff lacked credibility due to statements identified in the disability reports, the credibility analysis is also flawed. Factors that may be considered by an ALJ in assessing a claimant's credibility include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ determined, "The medical evidence of record does not support the extent of the claimant's subjective complaints and her statements and allegations are not fully consistent with the medical and other evidence." (Doc. 11-3 at 29-30) Notably, though the ALJ indicated Plaintiff's

statements were not consistent with "other evidence" in the record, the ALJ failed to specifically identify such evidence. Instead, the ALJ identified only medical evidence in the record as conflicting with Plaintiff's statements concerning "alleged mental limitations" and "alleged physical limitations." (*See* Doc. 11-3 at 29) In particular, the ALJ noted Plaintiff had a normal MRI of her brain, she "was oriented times three with a normal thought process..., an intact memory and no suicidal or homicidal ideation" and had a "negative examination of the musculoskeletal system" with "full motor strength." (*Id.*) Thus, the ALJ concluded Plaintiff's statements were "inconsistent with the medical and other evidence"—but only identified conflicting medical evidence. (*Id.*)

Importantly, in 1984, Congress amended the statutes governing disability to address allegations of pain. *See Bunnell*, 947 F.2d at 347; 42 U.S.C. § 423(d)(5)(A). With the amendment, "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Howard v. Heckler*, 782 F.2d 1484, 1488 n.4 (9th Cir. 1986). The Ninth Circuit observed,

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings.

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Therefore, an ALJ may not base an adverse credibility determination solely upon the medical evidence. *Id.; see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence cannot form the sole basis for discounting pain testimony").

Indeed, the Commissioner acknowledges that "how consistent Plaintiff's statements were with the objective medical evidence... could not be the ALJ's sole reason for rejecting [her] statements about symptoms." (Doc. 22 at 13) The Commissioner also argues findings in the medical record are inconsistent with Plaintiff's statements (*id.* at 13-14), yet fails to acknowledge that the ALJ did, in fact, only address the medical record to reject Plaintiff's statements concerning the limiting effects of her impairments. Because the ALJ identified only evidence in the medical record to discount Plaintiff's

statements and did not consider any other factors identified by the Regulations or the Ninth Circuit, the ALJ erred in evaluating Plaintiff's credibility.

**B.      Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony can be credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834.

Courts retain flexibility in crediting testimony as true, and a remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Here, the findings of the ALJ are insufficient to determine whether Plaintiff's statements should be credited as true. Consequently, the matter should be remanded for the ALJ to re-evaluate the evidence.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ failed to address Plaintiff's testimony

from the administrative hearing and failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Consequently, the administrative decision should not be upheld. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate for further proceedings, the Court offers no findings related the remaining issue identified in Plaintiff's opening brief.

Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Seng Saeteurn and against Defendant, Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 4, 2019**          /s/ Jennifer L. Thurston
                                      UNITED STATES MAGISTRATE JUDGE